# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | | |
|---|---|---|
| *In re:* | § § | |
| **GALLERIA 2425 OWNER, LLC** | § § | Case No. 23-60036 |
| *Debtor,* | § § § | (Chapter 11) |
| | § | |
| **GALLERIA 2425 OWNER, LLC, NAISSANCE GALLERIA, LLC, AND ALI CHOUDHRI** | § § § § § | |
| *Plaintiffs,* | § § | Adversary No. _____ |
| v. | § § | **CONTAINS JURY DEMAND** |
| **NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH** | § § § § | |
| *Defendant.* | § | |

## GALLERIA 2425 OWNER, LLC, NAISSANCE GALLERIA, LLC, AND ALI CHOUDHRI'S ORIGINAL COMPLAINT AGAINST NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH

COME NOW Galleria 2425 Owner, LLC, Naissance Galleria, LLC, and Ali Choudhri ("***Plaintiffs***"), and make and file this their Original Complaint against National Bank of Kuwait, S.A.K.P., New York Branch ("***Defendant***"), and for same show the Court as follows:

## I.
## JURISDICTION AND VENUE

1. This Court has personal jurisdiction over the Defendant named in this Complaint due to the fact that the Defendant transacts business in the State of Texas, including entering into a contract with a resident of the State of Texas performable in whole or in part within the State of Texas, or have committed a tort in whole or in part in Texas and are thus subject to the Texas Long

Arm Statute, Section 17.042 of the Texas Civil Practice and Remedies Code. The Court also has personal jurisdiction over the Defendants pursuant to 29 U.S.C. §1132(f).

2. The Court has subject matter jurisdiction of this Adversary Proceeding pursuant to 28 U.S.C. § 1334.

3. This adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (D), (H), and (O) because it will determine the amount of NBK's claim against the Debtor. To the extent the Court determines that any of the claims asserted herein are not core, the Plaintiffs hereby request and demand a trial by jury.

4. Venue of the Bankruptcy Case and the Adversary Proceeding is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## PARTIES

**A.     Galleria 2425 Owner, LLC.**

5. Galleria 2425 Owner, LLC ("***Debtor***") is a limited liability company doing business in Texas and is the owner of the building located at 2425 West Loop S., Houston, Texas ("***2425 Building***"). It is the Debtor in the bankruptcy case in which this Adversary is filed.

6. Naissance Galleria, LLC is a limited liability company doing business in Harris County, Houston, Texas.

7. Ali Choudhri is an individual residing in Harris County, Texas.

8. Defendant National Bank of Kuwait, S.A.K.P., New York Branch ("***NBK***") is a banking corporation organized under the laws of Kuwait, acting through its New York Branch. Defendant has not designated a registered agent for service of process in the State of Texas, but under Rule 7004(a)(8) of the Federal Rules of Bankruptcy Procedure, NBK may be served by mailing a copy of the Complaint to Corporation Service Company, 299 Park Avenue, New York,

New York 10171. Plaintiff requests that the clerk issue citation at this time. NBK has also filed a motion to dismiss the bankruptcy of Debtor and it and its counsel will be served by ECF in that proceeding.

### III.
### FACTUAL BACKGROUND

9. In 2018, Defendant NBK loaned certain funds to Debtor. There have been various disputes between the Debtor and NBK about the timeliness of payments and the extent and validity of Defendant's security, but the gravamen of Debtor's Complaint is NBK has continually interfered with the Debtor's ability to lease the 2425 Building to produce revenue and Debtor's ability to sell the 2425 Building to pay NBK off. Every time NBK has so interfered, it has then blamed the Debtor for its inability supposedly to meet some of the loan terms.

10. For example, in January 2021, Plaintiff Ali Choudhri, who is vilified by NBK in various pleadings, had the building at 2425 West Loop South, Houston, Texas, the asset of the Debtor, sold for a purchase price of $85 million, more than enough to clear NBK's debt. Attached hereto as **Exhibit 1** is a letter dated January 15, 2021 from SIBS International and two purchase contracts which would have paid off not only NBK, but left the Debtor and the other Plaintiffs with a great deal of value. NBK, rather than facilitate this sale, issued a formal notice of default to the Debtor and its intent to accelerate the loan on June 29, 2021, while the SIBS International deal was in progress, killing that deal.

11. The same was true with regard to NBK's interference with the Debtor's attempt to lease space in the building to provide revenue so it could operate and make loan payments. By August 2021, this situation had become untenable due to NBK's refusal to approve new tenants and new leases, prompting the Debtor on August 13, 2021 to send NBK a detailed letter regarding lease-up and renewal prospects for discussions, none of which, it seemed NBK would approve.

- **Healthcare Service Organization**

    - •Size: 130,000+ RSF – large client requirement in their preliminary planning stages: •Industry: Healthcare Service Organization •Type of use: Administration Offices •Direct/Sublease •Commencement date: Q3/2023 •Term:5-10 yrs.  They are specifically VERY interested in amenities available, for example: deli, gym, day care, conference center (# of seats), training center (# of seats).

- **Invesco**

    - We met with the team twice and are actively pursuing them for 2425.  They are interested in a 157-month lease term for 208,830 SF of Net Rental Area.

- **Financial Services Firm**

    - Office •AREA: West Houston (610 West, Hwy 290, Beltway 8) •SPACE: Open Concept •SIZE: Approximately 20,000 – 25,000 rsf •PARKING: 5/1000 ratio •OCCUPANCY: Late 2Q22/Early3Q22 •TERM: 36-60 months with renewal options •This tenant is currently at 24 Greenway on their top floor and have been looking at other A buildings.

- **Beyond Finance**

    - We are discussing a 68-month lease term for +/- 40,000 rentable SF.

- **Banco Affirme**

    - We submitted a 64-month lease term for 4,545 SF of Net Rental Area.

- **Walls Bank (existing tenant)**

    - Renew 3,054 SF of rental space for 60-month term starting January 1, 2022.

- **Others (working directly with ownership)**

    - ResMed (https://www.resmed.com/en-us/), interested in the entire building, working directly with Dr. Peter Farrell, Founder and Chairman

    - Healthstore Holdings (https://www.healthstore.com/), interested in a 15-year term with 80,000 SF in phase 1 and 75,000 SF in 12 months as phase 2

    - Immunicom (https://immunicom.com/), interested in at least two full floors, moving HQ from San Diego, CA

12.     Reproduced below is an August 16, 2021 email from counsel for the Debtor to NBK forwarding multiple leases for approval that NBK had failed to approve or even respond to.



This lack of approval, or finding obstacles to approve, was not new. In September 2019, Related Group had reached out to lease the parking garage located at the 2425 Building to be used for overflow, for parking up to 110 spaces. NBK's authorized representative Michael Carter would not approve this lease (note "nbkny" email address below– *i.e.* National Bank of Kuwait, New York Branch), which would have generated a great deal of revenue for the Debtor.

> From: Michael Carter <Michael.Carter@nbkny.com>
> Date: Monday, 23 September 2019 at 13:22
> To: Azeemeh Zaheer <azeemeh@naissancecapital.co.uk>, Lisa Walker <Lisa.Walker@nbkny.com>
> Subject: RE: LOI
>
> My primary concern is that the tenant determines when the commencement date is, presumably because they have zoning and building department approvals to complete as well as financing to arrange, which is understandable, however there does not appear to be an outside expiration date for the Commencement date. It appears they could tie up these space permanently without having to pay rent. I think you should have an outside date for Commencement.

13. The situation became so untenable that in September 2021, Debtor initiated a lawsuit against NBK.

14. In good faith, even during the pendency of this litigation, the Debtor was still trying to get tenants into the building and get NBK's approval to do so, so it would not claim additional breaches of loan agreements. On July 2, 2022, the Debtor sent NBK five leases for approval, which NBK did not approve.

15. The parties litigated for eleven (11) months until August 22, 2022, when they entered into a Confidential Settlement Agreement. The entire Confidential Settlement Agreement will be submitted to the Court *in camera* at the appropriate time, and the Debtor should be allowed to use it in this Adversary since the breach of that Settlement Agreement by NBK is not only actionable, but was also devastating to Debtor. Because NBK has a way of interpreting any action of the Debtor as one to breach or avoid some purported contractual obligation or other, when the reverse is entirely true, the Confidential Settlement Agreement has not been attached. NBK has prevented Debtor's successful performance under any and all agreements it has with NBK, including the Confidential Settlement Agreement.

16. The Confidential Settlement Agreement permitted a timeframe in which Debtor could sell the 2425 Building, and Debtor was successful in receiving a hard Letter of Intent dated January 17, 2023 to purchase the building from Caldwell Soames. A true and correct copy of that hard Letter of Intent is attached hereto as **Exhibit 2**. Again, while these negotiations were ongoing, NBK took actions which interfered with the continuation and closing of that transaction, including issuing a notice of foreclosure on March 29, 2023 in breach of the Confidential Settlement Agreement, which Debtor believes was done intentionally to prevent the sale. The sale would have cleared the Bank of Kuwait debt as it stood at that time and left great value for the other Plaintiffs. Debtor believes that Bank of Kuwait recognized that greater value and wanted to take it for itself by foreclosure in a "loan to own" gambit.

17. There are tremendous factual inaccuracies that NBK represents to courts and continues into these proceedings. For example, in its Motion to Dismiss the Debtor's Bankruptcy, while it is absolutely true that temporary restraining orders were filed to attempt to prevent a foreclosure by NBK and its takeover of the 2425 Building, they were also **granted**. The facts presented that NBK had not allowed the Debtor to lease up the building to generate revenue and had killed two transactions that Debtor was working on that would have cleared NBK and left value for the Debtor and the other Plaintiffs.

18. Additionally, NBK posted for foreclosure in 2023 early, and against an extended grace period that a State Court had given Debtor, which chilled the bidding process and interest in the 2425 Building completely. No one wants to buy a building posted for foreclosure. Debtor believes that NBK knew this and did it on purpose to prevent the Debtor from successfully selling the property and paying off the loan, so NBK could foreclose and become the owner of the 2425 Building.

19. Not the least of the misstatements that NBK makes about the Debtor are those hard statements that the Debtor has not made any payments to NBK since March 6, 2021. This is stated both in paragraph 13 of NBK's Motion to Dismiss Debtor's Bankruptcy, and in NBK's Mr. Carter's Declaration (paragraph 8 of Declaration of Michael Carter).

20. The absolute opposite is true. Representatives of NBK have admitted in writing that the following substantial payments have been made to NBK well after March 6, 2021:

   a) $801,509.42 paid by Debtor to NBK on August 27, 2022;

   b) $80,000 paid by Debtor to NBK on April 18, 2023;

   c) $80,000 paid by Debtor to NBK on May 10, 2023.

This is almost One Million Dollars ($1,000,000) that not only does NBK not give credit to the Debtor for having made the payments, but again, it vilifies it, saying exactly the opposite that no payments (zero) have been made since March 6, 2021.

21. After NBK's disclosures of the situation created by the Confidential Settlement and the wrongful posting for foreclosure during an extension of that agreement, potential buyers of the property who would otherwise become good prospects to negotiate a sale with Debtor, became potential purchasers of the NBK Note and began negotiating with NBK. NBK materially breached the Confidential Settlement Agreement and interfered with these potential purchases and with these business relationships.

## IV.
## CAUSES OF ACTION

**COUNT 1: BREACHES OF CONFIDENTIAL SETTLEMENT AGREEMENT**

22. Plaintiffs repeat and reallege the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

23. Debtor and the other two Plaintiffs and Defendant reached a valid and enforceable agreement expressly set forth in the Confidential Settlement Agreement. Pursuant to the Confidential Settlement Agreement, Defendant agreed to keep the contents and terms of the parties' agreement completely confidential. Debtor dismissed its very good claims in the Lawsuit against Defendant in reliance upon Defendant's promises, including but not limited to, Defendant's promise to uphold the confidentiality obligations set forth in the Confidential Settlement Agreement.

24. Defendant breached the Confidential Settlement Agreement by disclosing its contents and terms to third parties in violation of the agreement's express confidentiality provisions. These disclosures prevented Debtor from closing on the sale of the 2425 Building and chilled the market for other buyers for Debtor's property. The same is true for NBK's wrongful, early filing of a notice of foreclosure on the 2425 Building, also in violation of the Confidential Settlement Agreement.

25. Debtor and all Plaintiffs hereby sue NBK for these breaches of the Confidential Settlement Agreement. The damages for these breaches are the amounts of money that the Debtor would have made from the contemplated transaction, which is in excess of Fifty Million Dollars ($50,000,000).

**COUNT 2: TORTIOUS INTERFERENCE WITH CONTRACT**

26. Plaintiffs repeat and reallege the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

27. As alleged, NBK tortiously interfered with the SIBS International contract (**Exhibit 1**) and the Caldwell Soames Inc. contract (**Exhibit 2**), causing damages to the Debtor and the other two Plaintiffs in the net amounts of the contracts which, but for NBK's interference,

would have been paid to the Debtor and the other two Plaintiffs.  These damages are excess of Fifty Million Dollars ($50,000,000), for which the Debtor hereby sues NBK.

### COUNT 3:  TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

28. Plaintiffs repeat and reallege the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

29. After NBK's disclosures of the situation created by the confidential settlement and the wrongful posting for foreclosure during a judicial extension of the grace period contained in that agreement, potential buyers of the property who would otherwise have become good prospects to negotiate a sale with Debtor, became instead potential purchasers from NBK of the NBK note and began contacting and negotiating or attempting to negotiate with NBK instead of the Debtor.

30. This interference by NBK damaged Debtor in amounts to be determined after discovery, but which exceed the minimum jurisdictional limits of this Honorable Court.

### COUNT 4:  FRAUD AND FRAUDULENT INDUCEMENT/LENDER LIABILITY

31. Plaintiffs repeat and reallege the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

32. NBK never had any intention of living up to the Confidential Settlement Agreement.  The Debtor was winning the lawsuit against NBK, so NBK induced the Debtor into dismissing its lawsuit and entering into the Confidential Settlement Agreement which NBK had no intention of living up to.  This fraud works an estoppel against NBK (see Count 6, "ESTOPPEL").  Plaintiffs hereby sue NBK for the fraud and fraudulent inducement and alleges it constitutes the basis for an action for Lender Liability.

33. NBK knew at the time it entered into the Confidential Settlement Agreement it would deflect and tortiously interfere with the Debtor's attempts to sell the 2425 Building so NBK

would be able to foreclose on the building and take all of the value instead of just the value of the amounts otherwise owed at the time. The fraud, fraud in the inducement, lender liability, and subsequent interference for all of which Plaintiffs hereby sue NBK. These actions by NBK have damaged the Debtor and the other two Plaintiffs in an amount of at least Thirty Million Dollars ($30,000,000).

### COUNT 5: FRAUDULENT CONVEYANCE

34. Plaintiffs repeat and reallege the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

35. The funds paid by the Debtor to NBK:

    a) $801,509.42 paid Debtor to NBK on August 27, 2022;

    b) $80,000 paid by Debtor to NBK on April 18, 2023; and

    c) $80,000 paid by Debtor to NBK on May 10, 2023

were fraudulently induced by NBK and were payments for which the Debtor received nothing in return and constitute fraudulent conveyances in violation of U.S.C. § 544, 548, and 550 and TEX. BUS. & COMM. CODE §§ 24.001, *et seq.*, for which the Debtor hereby sues NBK to recover all such amounts.

### COUNT 6: ESTOPPEL

36. Plaintiffs repeat and reallege the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

37. NBK is estopped from claiming Debtor owes any more than the amount stated and agreed to in the Confidential Settlement Agreement because of its fraud and fraudulent inducement alleged previously.

### COUNT 7: BUSINESS DISPARAGEMENT

38. Plaintiffs repeat and reallege the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

39. The posting of the 2425 Building during any negotiation periods and/or the extended grace period when actual buyers were moving toward concluding a deal and when other potential buyers were expressing interest in the 2425 Building, constituted business disparagement against the Debtor for which Debtor hereby sues NBK. The damages are the net amount of money the Debtor would have received in the sales had they occurred.

### COUNT 8: BREACH OF GOOD FAITH AND FAIR DEALING

40. Plaintiffs repeat and reallege the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

41. Every contract has a duty of good faith and fair dealing engrafted upon it, especially in a lender/borrower relationship, and even more so when the lender is based in the State of New York as NBK is.

42. NBK breached its duty of good faith and fair dealing by:

   a) Inducing Plaintiffs to dismiss their State Court lawsuit;

   b) Inducing Plaintiffs to enter into the Confidential Settlement Agreement;

   c) Tortiously interfering with Debtor's performance under the Confidential Settlement Agreement;

   d) Tortiously interfering with third-party contracts;

   e) Not approving tenant leases or contracts for sale; and

   f) deflecting buyers so Debtor could not sell the 2425 Building.

43. Plaintiffs hereby sue NBK for breach of duty of good faith and fair dealing. The damages are for the value of the amounts that would have been recovered in the state court litigation and/or the value of the deals lost for leases and/or sales of the 2425 Building.

### COUNT 9: UNJUST ENRICHMENT

44. Plaintiffs repeat and reallege the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

45. If NBK is allowed to foreclose on the 2425 Building it will make an unconscionable profit and succeed in its "loan to own" gambit. The amount of its unjust enrichment for which Plaintiffs hereby sue NBK is the difference between what NBK would have been owed (but for its breaches of the Confidential Settlement Agreement) under the Confidential Settlement Agreement and the true value of the building, for which Plaintiffs hereby sue NBK.

### COUNT 10: ATTORNEYS' FEES

46. Plaintiffs repeat and reallege the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

47. Plaintiffs hereby sue NBK for their reasonable and necessary attorneys' fees under breach of contract and under any statutory or common law right to recover same.

### PRAYER

WHEREFORE, premises considered, Plaintiffs pray that Defendants be cited to appear herein as provided by law and that upon hearing:

1. NBK not be allowed to foreclose on the 2425 Galleria Building;

2. Plaintiffs recover their damages and attorneys' fees as alleged.

Dated: September 19, 2023

Respectfully submitted,

**HAYWARD PLLC**

By: /s/ Melissa S. Hayward
    Melissa S. Hayward
    Texas Bar No. 24044908
    MHayward@HaywardFirm.com
10501 North Central Expy., Suite 106
Dallas, Texas 75231
(972) 755-7100 (telephone/facsimile)
**PROPOSED COUNSEL FOR THE DEBTOR**


By: /s/ James Q. Pope
    James Q. Pope
    State Bar No. 24048738
    jamesp@thepopelawfirm.com
**THE POPE LAW FIRM**
6161 Savoy Drive, Suite 1125
Houston, Texas  77036
(713) 449-4481 Telephone
(281) 657-9693 Facsimile
**COUNSEL FOR PLAINTIFFS ALI CHOUDHRI AND NAISSANCE GALLERIA LLC**


## CERTIFICATE OF SERVICE

     The undersigned hereby certifies that the foregoing was filed with the Court and served via the Court's CM/ECF system upon all of the parties registered to receive such notice on September 19, 2023.

*/s/ Melissa S. Hayward*
Melissa S. Hayward